***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CAROLINE LICWINKO, | : | |
| Plaintiff, | : | Civil Action No. 20-00255 |
| v. | : | |
| | : | **OPINION** |
| CELGENE CORPORATION and AMY KLEIN, | : | |
| Defendants. | : | |

**WOLFSON, Chief Judge:**

Presently before the Court is a motion by defendant Amy Klein ("Klein") to dismiss the Complaint filed by plaintiff Caroline Licwinko ("Plaintiff") for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). The instant motion arises out of the termination of Plaintiff's employment with defendant Celgene Corporation[1] ("Celgene") (Klein and Celgene collectively, "Defendants"), after Plaintiff took a leave of absence to care for herself and her child, who was the victim of a sexually violent offense. Plaintiff's Complaint raises claims under the New Jersey Family Leave Act ("NJFLA"), the Family and Medical Leave Act ("FMLA"), the New Jersey Law Against Discrimination ("LAD"), the New Jersey Security and Financial Empowerment Act ("SAFE Act"), and a *Pierce*[2] public policy claim.

For the reasons that follow, Defendant Klein's motion to dismiss is **GRANTED** in part as follows: Plaintiff's FMLA and LAD claims are dismissed without prejudice. Plaintiff is given

---

[1]   Celgene has not joined in Klein's motion to dismiss.
[2]   *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980) establishes a common law cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy.

1

leave to file an amended complaint, by July 24, 2020, to cure the deficiencies outlined in this Opinion.  Plaintiff's *Pierce* and NJFLA claims are dismissed with prejudice.  However, Defendant's motion to dismiss Plaintiff's SAFE Act claim is terminated, pending additional briefing on the issue of waiver; Defendants, both Celgene and Klein, are directed to file their briefing by no later than July 22, 2020, and Plaintiff shall file her response by no later than August 5, 2020.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The facts of this matter, as set forth in Plaintiff's Complaint and taken as true by this Court on the motion to dismiss, are as follows.  Plaintiff began working for Celgene on July 1, 2014 and was recognized for "outstanding" performance until 2018. (Compl., ¶¶ 14, 19-20.)  In March 2018, Plaintiff learned that her young child was the victim of a sexually violent offense, which has resulted in criminal investigations.  (*Id*., ¶ 22.)  As a result, Plaintiff was allegedly diagnosed with an acute stress reaction which required psychotherapy, professional treatment, and medication. (*Id*., ¶ 24.)  Subsequently, Plaintiff requested a leave of absence to seek medical attention and psychological counseling for herself and her child, and to participate in criminal court proceedings. (*Id*., ¶ 23.)  Plaintiff obtained approval from Celgene and Klein, a member of Celgene's upper management, to take a leave of absence, which spanned from March 8, 2018 to May 6, 2018.  (*Id*., ¶¶ 26-27.)  Celgene recognized and processed this leave of absence as FMLA leave.  (*Id*., ¶ 28.)

Plaintiff alleges that upon her return from leave, Defendants began harassing her, treating her differently, and fabricating new issues related to Plaintiff's employment and performance.  (*Id*., ¶ 31.)  On May 11, 2018, on her first week back at work, Plaintiff was purportedly summoned to attend a meeting at Celgene's corporate headquarters with Klein and other Celgene personnel. (*Id*., ¶ 32.)  During the meeting, Defendants allegedly raised issues and unfounded accusations for the

2

first time against Plaintiff.  (*Id*., ¶ 34.)  Defendants reportedly questioned Plaintiff about whether the issues that caused her to take leave had been resolved by asking, "So you're saying that nothing will affect how you work from here on out?"  (*Id*., ¶¶ 35-36.)  Defendants also allegedly asked Plaintiff, "Are you willing to commit to work up to the full expectations of the job?  It's expected that you work 9 to 5 every day.  9 to 5 every day.  Do we have your commitment on that?"  (*Id*., ¶ 38.)  Additionally, Celgene management allegedly refused to provide information requested by Plaintiff about what she had missed during her two months of leave.  (*Id*., ¶ 39.)

Plaintiff purportedly felt so traumatized by the meeting that she took the rest of the day off, utilizing half a vacation day in order to do so.  (*Id*., ¶ 41.)  That same afternoon, Plaintiff received an email from Klein stating that Plaintiff was now required to give advance notice for vacation days.  (*Id*., ¶ 42.)  From that point on, Klein and other members of Celgene management allegedly ceased communication with Plaintiff and denied her work-related support required on matters necessary to perform her job.  (*Id*., ¶ 43.)  Additionally, Celgene allegedly blocked Plaintiff from using her corporate credit card, denying her a tool critical for her work as a sales professional.  (*Id*., ¶ 47.)  On August 20, 2018, Plaintiff notified Defendants that she required additional time off for her and her child's ongoing medical treatment and appointments.  (*Id*., ¶ 49.)  On August 21, 2018, Celgene notified Plaintiff that she was eligible for 3.6 weeks of remaining FMLA leave, and Celgene required Plaintiff to use this FMLA leave to care for her child instead of her vacation, personal, or lunch time.  (*Id*., ¶¶ 51, 53.)  Plaintiff intermittently used this remaining FMLA leave two days per week from August 23, 2018 through November 2018.  (*Id*., ¶ 27.)

According to Plaintiff, Defendants continued their campaign of discrimination and retaliation by investigating Plaintiff on past events, which had occurred two and a half years earlier.  (*Id*., ¶ 54.)  The investigation, which was conducted by outside legal counsel, allegedly did not

reveal any evidence of wrongful conduct by Plaintiff.  (*Id*., ¶ 55.)  In 2019, an "anonymous tip" prompted Defendants to launch another investigation into alleged wrongdoing by Plaintiff.  (*Id*., ¶ 60.)  As in the first investigation, the accusation was eventually determined to be unfounded and unsubstantiated; however, Defendants allegedly continued investigating Plaintiff for months, and ordered Plaintiff to attend "interrogations" with Celgene's legal counsel on mere hours' notice.  (*Id*., ¶¶ 61-63.)

On June 25, 2019, Plaintiff, again, requested time off to prepare for criminal court proceedings concerning the sexual violence suffered by her child.  (*Id*., ¶ 66.)  Celgene granted the request and acknowledged that it was made pursuant to the New Jersey SAFE Act.  (*Id*., ¶ 67.)  Two weeks later, on July 12, 2019, Celgene allegedly "interrogated" Plaintiff on less than a day's notice and without legal counsel to represent Plaintiff.  (*Id*., ¶ 68.)  Despite a lack of evidence to support the unfounded allegations against Plaintiff, Celgene terminated Plaintiff's employment on August 6, 2019, while Plaintiff was on vacation.  (*Id*., ¶ 69.)

Plaintiff filed the present lawsuit against Defendants on December 10, 2019, in New Jersey state court, asserting claims under the NJFLA, FMLA, LAD, SAFE Act, and *Pierce*.  On January 7, 2020, Defendants removed the matter to this Court.  On January 28, 2020, Klein filed the instant motion.[3]

## II.   STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations

---

[3]   In addition to the claims discussed below, Klein also moved to dismiss Plaintiff's NJFLA claim on the ground that the statute does not provide for individual liability against supervisors. (Def. Br. at 5-6.)  Plaintiff concedes that she cannot locate any case imposing individual supervisor liability under the NJFLA and consents to dismissal of her NFJLA claim against Klein. (Pl. Br. at 21-22.)  Accordingly, Plaintiff's NJFLA claim against Klein is dismissed with prejudice.

as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the Court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of trust." *Id.* Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III. ANALYSIS

#### A. Family Medical Leave Act Claim

Klein moves to dismiss Plaintiff's FMLA claim, arguing that the Complaint does not contain factual allegations which support a plausible inference that Klein intentionally violated the Plaintiff's rights. (ECF No. 7-1, Def. Br. at 6.) Klein further argues that the Complaint only contains vague allegations that do not individually implicate her. (ECF No. 9, Def. Reply at 3.) In response, Plaintiff argues the Complaint supports an FMLA claim because it factually details how Klein participated with management to harass and eventually terminate Plaintiff. (ECF No. 8, Pl. Br. at 21.)

Under the FMLA, eligible employees are entitled to a total of 12 workweeks of leave in a 12-month period for reasons including a serious health condition or caring for a child with a serious health condition. 29 U.S.C. § 2612(a)(1). An employee who takes leave under the FMLA is entitled to return to his or her previous position or a position with equivalent benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1). An individual may be held liable under the FMLA when that person exercises supervisory authority over an employee and is responsible in whole or part for an alleged violation.[4] *Haybarger v. Lawrence Cty. Adult Prob. &*

---

[4] Most courts look to the "economic reality" of the employment situation to determine whether an individual supervisor carried out the functions of an employer vis-a-vis an employee. *Haybarger*, 667 F.3d at 417. "[S]ome of the relevant factors in ascertaining the economic reality of the employment situation include whether the individual '(1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* at 418 (quoting *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999). The Complaint states that Klein supervised Plaintiff's work schedules and maintained employment records, (*Id.*, ¶¶ 26, 41.), but does not directly address whether Klein had individual authority to hire and fire Plaintiff or to set her rate and method of payment. Nevertheless, Klein does not dispute on this motion that she was Plaintiff's employer within the meaning of the FMLA.

*Parole*, 667 F.3d 408, 417 (3d Cir. 2012). The FMLA provides for two different causes of action: interference and retaliation. *Lupayan v. Corinthian Colls., Inc.*, 761 F.3d 314, 318 (3d Cir. 2014). While the Complaint does not explicitly state under which cause of action she is proceeding, it appears that Plaintiff asserts both. The Complaint states that it is unlawful for an employer to either withhold the FMLA's protections or to discriminate against, or terminate, an employee who exercises these rights. (Compl., ¶ 99.) Plaintiff argues that the Complaint should not be dismissed on either the interference or the retaliation theory of recovery. (Pl. Br. at 25.)

First, an employee can raise a claim for interference with his or her exercise of FMLA rights under 29 U.S.C. § 2615(a)(1). "To make a claim of interference under the FMLA, a plaintiff must establish: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017). An interference action centers around whether an employee received all the benefits to which he or she was entitled under the FMLA, namely, leave and reinstatement. *Capps*, 847 F.3d at 155. Both Plaintiff and Klein cite to *Parker v. Hahnemann Univ. Hosp.*, 234 F. Supp. 2d 478, 484 (D.N.J. 2002), as an example of an FMLA interference claim involving reinstatement. In *Parker*, plaintiff nurse took medical leave pursuant to the FMLA, but when she returned, her position had been eliminated, and she was obligated to either take severance or apply for other positions at the hospital with different hours and levels of qualification. *Id*. at 482. The court concluded that the circumstances created sufficient questions of fact on whether the plaintiff was denied the benefit of reinstatement, and, therefore, the court denied the defendant hospital's motion for summary judgment. *Id*. at 492-93.

7

Here, Plaintiff has not pled facts sufficient to raise an FMLA interference claim, because the Complaint does not allege that Klein in any way prevented Plaintiff from taking the full length of FMLA leave that she requested, and, in fact, the Complaint acknowledges that Plaintiff was made fully aware of her remaining eligibility after her first absence. (Compl., ¶ 51.) Indeed, unlike in *Parker*, Plaintiff has not alleged that she was denied the right of reinstatement at her original position with the same pay and benefits after returning from FMLA leave in May or November 2018. Since the Complaint does not allege that Klein denied Plaintiff any of the benefits that she was entitled to under the FMLA, Plaintiff has not adequately alleged an interference claim against Klein.

Second, a plaintiff may raise an FMLA claim for retaliation under 29 U.S.C. § 2615(a)(2). The retaliation cause of action is "based on the 'proscriptive rights' of the FMLA which prevent an employer from discriminating against employees and prospective employees who have taken FMLA leave." *Parker*, 234 F. Supp. 2d at 488. To succeed on an FMLA retaliation claim, a plaintiff must show that (1) the plaintiff invoked his or her right to FMLA-qualifying leave, (2) the plaintiff suffered an adverse employment decision, and (3) the adverse action was causally related to his or her invocation of rights. *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014). Here, Klein contends that Plaintiff has failed to allege the second element, that Klein took an adverse employment action against Plaintiff. (Def. Reply at 2.)

"To demonstrate the existence of an adverse employment decision, … 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse,' such that the action well might have dissuaded a reasonable worker from taking a protected action." *Kasper v. County of Bucks*, 514 F. App'x 210, 216 (3d Cir. 2013) (quoting *Burlington N. & Santa*

*Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).[5]  Consequently, not every "unwelcome" workplace change qualifies as an adverse employment decision for purposes of an FMLA retaliation claim. *Reganato v. Appliance Replacement*, No. 15-6164, 2017 U.S. Dist. LEXIS 26655, at 13 (D.N.J. Feb. 27, 2017).  In *Reganato*, an employee alleged that her employer retaliated against her by increasing her workload and no longer letting her work overtime or through lunch.  *Id*. at *15.  However, neither allegation was sufficiently "serious and tangible" to constitute an adverse employment decision which would support an FMLA retaliation claim.  *See also Kasper*, 514 F. App'x at 216-17 (affirming the dismissal of an employee's FMLA claim because a disciplinary warning that required the employee to provide doctor's notes for future absences was merely "among the 'minor annoyances' of office life" and did not constitute an adverse employment action); *Turner v. N.J. State Police*, No. 08-5163, 2017 U.S. Dist. LEXIS 48036, at *61 (D.N.J. Mar. 29, 2017) (finding that a superior subjecting an employee to a "counseling" session for missing training did not amount to an adverse employment decision).

Here, the Complaint does not state an FMLA retaliation claim against Klein, because it does not allege that Klein was personally responsible for any adverse employment decision. Plaintiff alleges that Klein and other Celgene management called her into a meeting on May 11, 2018, the week that Plaintiff returned from two months of FMLA leave.  (Compl., ¶ 32.)

---

[5]  The test for an adverse employment decision, under the FMLA, appears to be unsettled in the Third Circuit. *Kasper* applies the adverse employment decision standard from *Burlington Northern*, a Title VII case, but notes that the Third Circuit previously employed a more restrictive definition which required that an adverse decision "'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Kasper*, 514 F. App'x at 216, n.5 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).  However, in *Fiorentini v. William Penn Sch. Dist.*, 665 F. App'x 229, 234 (3d Cir. 2016), the Third Circuit, without any explanation, applied the more restrictive definition of an adverse employment action. Nevertheless, Plaintiff's Complaint fails to state a claim even under the more lenient *Burlington Northern* standard.

According to Plaintiff, the management, including Klein, harassed Plaintiff at that meeting by raising unfounded accusations against her, demanding a commitment to return to "9 to 5 everyday" work, and inquiring "So you're saying that nothing will affect how you will work from here on out??" (Compl., ¶¶ 36, 38.) However, these allegations are insufficient to state an FMLA retaliation claim because Klein's actions did not amount to an adverse employment decision. Klein's actions did not impose any material changes to the conditions of Plaintiff's employment. In addition, Plaintiff alleges that Klein individually retaliated against her by making Plaintiff begin to provide advance notice before days off work. (Compl., ¶ 41.) Again, this allegation is not sufficient to support a retaliation claim, since the requirement to provide notice for a future absence is, as in *Kasper*, closer to a "minor annoyance" than an adverse employment action.

While other incidents identified in the Complaint, such as the alleged disciplinary investigations and Plaintiff's termination, could conceivably constitute adverse employment actions, Plaintiff has not specifically alleged that Klein was involved in those events. For example, the Complaint alleges that "defendants," presumably including Klein, made unsupported allegations against Plaintiff, launched a pretextual investigation, and eventually terminated Plaintiff's employment. (Compl., ¶¶ 56, 60, 69.) While termination is an adverse employment decision, *Duncan v. Chester Cty. Hosp.*, 677 F. App'x 58, 62 (3d Cir. 2017), the Complaint does not allege any facts explaining whether or how Klein was individually involved in the termination or the investigation preceding it; rather, the Complaint makes general allegations against "defendants." For instance, allegations such as "[t]he defendants continued investigating the plaintiff for months and hired outside legal counsel," do not specifically allege any action on the part of Klein, personally. (Compl., ¶ 41.) These types of conclusory allegations are insufficient to show, under the FMLA, that Klein was individually responsible for adverse employment

10

decisions. *Compare Shreve v. N.J. Motor Vehicle Comm'n*, No. 157957, 2016 WL 5334661, at *3–4, 2016 U.S. Dist. LEXIS 129608, at *8-9 (D.N.J. Sept. 22, 2016) (denying motion to dismiss FMLA claims against an individual defendant where the plaintiff alleged that the defendant had the authority to suspend her without pay, reject her employment accommodation plan, and was the one who terminated her employment), *with Ross-Tiggett v. Reed Smith LLP*, No. 15-8083, 2016 U.S. Dist. LEXIS 113554, at *18-19 (D.N.J. Aug. 25, 2016) (dismissing FMLA claim against individual without allegations of personal involvement in a violation). Therefore, Plaintiff's FMLA claim against Klein is dismissed without prejudice.

### B. New Jersey Law Against Discrimination Claim

Klein moves to dismiss Plaintiff's LAD claim, arguing that the Complaint does not contain factual allegations that plausibly establish that Klein knowingly and substantially assisted Celgene in terminating Plaintiff's employment. (Def. Br. at 7-8.) In response, Plaintiff argues that the Complaint sufficiently states a LAD claim against Klein for aiding and abetting Celgene in terminating Plaintiff because of her disability, an acute stress reaction. (Pl. Br. at 28.) In that connection, Plaintiff reasons that she has averred in detail how Klein knowingly assisted in discriminatory and retaliatory conduct, and that Klein is liable on a theory of supervisory liability under the LAD. (Pl. Br. at 28-29.)

N.J.S.A. 10:5-12a states that is unlawful to discharge or discriminate against an employee in compensation or in terms, conditions, or privileges of employment because of an employee's disability. In order to succeed on a disability discrimination claim under the LAD, a plaintiff must allege that (1) she is disabled within the meaning of the LAD; (2) she was performing her job at a level that met her employer's legitimate expectations; (3) she was discharged; and (4) the employer sought someone else to perform the same work after she left. *Grande v. St. Claire's Health System*,

230 N.J. 1, 18 (2017). Although "the plain meaning of the definition of employer in the LAD does not include a supervisor," individual liability can "arise through the 'aiding and abetting' mechanism." *Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 594 (2008). "Thus, in order to hold an employee liable as an aider or abettor, a plaintiff must show that '(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of [her] role as part of an overall illegal or tortious activity at the time that [she] provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'" *Tarr v. Ciasulli*, 181 N.J. 80, 84 (2004) (quoting *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999); *see also Gross v. City of Jersey City*, No. 18-9802, 2019 U.S. Dist. LEXIS 81559, at *15 (D.N.J. May 15, 2019) (dismissing LAD aiding and abetting claims against the plaintiff's coworkers based on merely conclusory allegations that the defendants controlled the plaintiff's workplace and participated in decisions to retaliate); *Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 405 (D.N.J. 2008) (dismissing LAD aiding and abetting claims where the complaint only stated "blanket assertions" against defendants without alleged specific conduct).

Here, Plaintiff has not sufficiently pled a LAD claim against Klein, because the Complaint lacks sufficient allegations that Klein knowingly and substantially assisted Celgene in violating Plaintiff's rights under the LAD. Although Klein is named in the Complaint, Klein's last specifically alleged act occurred on May 11, 2018, well over a year before Plaintiff was terminated on August 6, 2019. This time gap fails to plausibly connect the individual allegations against Klein and Celgene's decision to terminate Plaintiff. Moreover, between that period of time, the Complaint only asserts blanket allegations against "Defendants" and does not allege any knowing and substantial assistance from Klein. Therefore, Plaintiff has not pled factual allegations that

support an "aiding and abetting" LAD claim against Klein, and that claim is dismissed without prejudice.

### C. New Jersey SAFE Act Claim

Klein moves to dismiss Plaintiff's SAFE Act claim, arguing that the allegations are overly generalized, and that the claim is barred by the SAFE Act's one-year statute of limitations. (Def. Br. at 10.) In opposition, Plaintiff argues that the claim is specific and timely. (Pl. Br. at 33.) Plaintiff argues that her claim is not barred by the statute of limitations because she took leave pursuant to the SAFE Act on June 25, 2019, was terminated on August 6, 2019, and filed her Complaint against Klein only four months later, on December 10, 2019. (Pl. Br. at 33.) Plaintiff alternatively seeks to overcome the statute of limitations by invoking the continuing violation doctrine, which provides that when an individual is subject to continual retaliatory conduct, the statute of limitations does not begin to run until the wrongful action ceases. (Pl. Br. At 34.) Klein replies that the continuing violation doctrine does not apply to statutes such as the SAFE Act, and therefore, Plaintiff's claim against Klein would be barred by the statute of limitations even if it contained sufficient factual allegations. (Def. Reply at 4-5.)

The SAFE Act affords 20 days of protected unpaid leave to a victim of domestic violence or a sexually violent offence, or to an employee whose family member is a victim. N.J.S.A. 34:11C-3. The SAFE Act provides that "[a]n employer shall not discharge, harass or otherwise discriminate or retaliate or threaten to discharge, harass or otherwise discriminate or retaliate against an employee . . . on the basis that the employee took or requested any leave to which the employee was entitled" to under the Act. N.J.S.A. 34:11C-4. The leave must be "used in the 12-month period next following any incident of domestic violence or any sexually violent offense. . . ." *Id*. If an employee requests leave for a reason covered by both the SAFE Act and the FMLA,

the leave will count simultaneously against the employee's entitlement under both laws. 34:11C-3. An action brought under the SAFE Act "shall be commenced within one year of the date of the alleged violation." N.J.S.A. 34:11C-5.

Here, Klein argues that Plaintiff's SAFE Act claim against her is barred by the one-year statute of limitations. Indeed, the SAFE Act requires that an employee use leave within 12 months of a sexually violent offense. Plaintiff became aware that her child was the victim of a sexually violent offense in March 2018, but she did not officially request leave pursuant to the SAFE Act, for the first time, until June 25, 2019, well over 12 months later. (Compl., ¶¶ 22, 66.) Ostensibly, at that point in time, Plaintiff could not have invoked the SAFE Act since she was out of time to do so. However, while the parties have not raised this issue, the Court *sua sponte* questions whether the fact that Celgene allegedly accepted Plaintiff's request for SAFE Act leave in June 2019, constitutes a waiver of such defense by Celgene and Klein under the statute. If such a waiver exists, Plaintiff's suit would be timely, since she filed her Complaint in December 2019. The Court will direct the parties to submit supplemental briefing on this issue.

Notwithstanding waiver, I will address the parties remaining arguments related to the statute of limitations. Indeed, since Plaintiff took FMLA leave on March 8, 2018 in part to provide assistance to her child, the first 20 days of this period may presumably also qualify as SAFE Act leave pursuant to N.J.S.A. 34:11C-3. Thus, Plaintiff could conceivably allege a SAFE Act claim based on the alleged retaliatory actions that took place after she returned to work on May 11, 2018, following her initial leave. Nonetheless, even if the Court were to so construe Plaintiff's claim, it would also fail because it is, too, barred by the statute of limitations, because Plaintiff did not file suit until December 2019, well after the one-year limitations period. However, Plaintiff argues that since a continual, cumulative pattern of alleged tortious conduct continued into 2019, the

14

continuing violation doctrine should toll the statute of limitations until the tortious conduct ceased. (Pl. Br. at 34.) I do not agree.

The continuing violation doctrine can provide an exception to a statute of limitations period when "'the cumulative effect of a series of discriminatory or harassing events represents a single cause of action.'" *Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 18 (2002) (quoting *Wilson v. Wal-Mart Stores*, 158 N.J. 263, 273 (1999)). As a general rule, "'[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases.'" *Id*. (quoting *Wilson*, 158 N.J. at 272) (applying the continuing violation doctrine to the LAD). However, Plaintiff acknowledges that there is no precedent for applying the continuing violation doctrine to the SAFE Act's statute of limitations. Additionally, *Clark v. Phila. Hous. Auth.*, No. 14-5460, 2015 U.S. Dist. LEXIS 52606, at *5 (E.D.P.A. Apr. 21, 2015), *aff'd*, 701 F. App'x 113 (3d Cir. 2017), refused to apply the continuing violation doctrine to the FMLA, another statute that guarantees protected leave to employees. The doctrine "arose in the context of discrimination claims, and 'the weight of authority leans decidedly against' applying the continuing violation doctrine to FMLA claims," because leave statutes are more likely to relate to discrete events that should not be aggregated. *Id*. at *5-6. (quoting *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 463 n. 14 (S.D.N.Y. 2011)); *see also Mercer v. SEPTA*, 608 F. App'x 60, 63 (3d Cir. 2015) (holding that a reasonable accommodations request under the Americans with Disabilities Act "is a one-time occurrence rather than a continuing practice, and therefore, does not fit under the continuing violations theory").

I find that Plaintiff cannot rely on the continuing violation doctrine to toll the statute of limitations. At the outset, the SAFE Act is not a discrimination statute, but rather a leave statute analogous to the FMLA, to which *Clark*, affirmed by the Third Circuit, refused to apply the

continuing violation doctrine.  Both the FMLA and the SAFE Act prohibit retaliation based on a specific, discrete event, taking leave, instead of an employee's ongoing characteristic, like a disability, or discrimination.  In other words, requesting SAFE Act leave is a one-time occurrence, and thus, the continuing violation doctrine is not compatible with the remedy that the SAFE Act provides; in that respect, Plaintiff cannot rely upon the doctrine to toll the statute of limitations.

Moreover, even if the continuing violation doctrine were applicable in this context, it does not appear that it would rescue Plaintiff's untimely SAFE Act claim, because her claim involves discrete acts, such as wrongful termination and the unwarranted investigations.  Plaintiff argues that a pattern of retaliatory behavior constituting a continuing violation began on May 11, 2018, when Plaintiff was allegedly called into a meeting with Klein where unfounded issues and accusations were raised against her.  (Compl., ¶¶ 32, 34.)  The alleged pattern of retaliation continued when Klein allegedly required Plaintiff to provide advance notice of vacation days and time off work.  (Compl., ¶ 41.)  According to Plaintiff, that pattern of behavior extended into 2019 after an "anonymous tip" allegedly triggered a pretextual company investigation against Plaintiff.  (Compl., ¶ 60.)  This investigation allegedly led to Plaintiff being "interrogated" on different occasions as late as July 12, 2019.  (Compl., ¶ 68.)  The alleged series of retaliatory conduct concluded on August 6, 2019, when Plaintiff's employment was terminated.  (Compl., ¶ 69.)  However, Plaintiff cannot rely on this pattern of retaliation to invoke the continuing violation doctrine, since each act she alleges is a discrete event.  For example, termination, like wrongful discipline, is a discrete event that cannot be used to invoke the continuing violation doctrine and toll the statute of limitations.  *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (discussing types of discrete acts that are not susceptible to the continuing violations doctrine, including "wrongful discipline").  In addition, wrongful accusations and pretextual investigation

are also discrete acts. *See Defalco v. Rutgers Univ. Police Dep't,* No. 15-6607, 2017 WL 1250990, at *5 (D.N.J. Mar. 10, 2017) ("If the plaintiff's claims are based on discrete acts which give rise to causes of action that can be brought individually, then the continuing violations doctrine does not serve to extend the applicable statute of limitations periods. Discrete acts can include: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, and wrongful accusation").

Accordingly, Plaintiff may not invoke the continuing violation doctrine to save her SAFE Act claim, in the event the claim is untimely filed absent a waiver by Celgene. On the issue of waiver, the parties are directed to submit supplemental briefing; Defendants, both Celgene[6] and Klein, shall file their briefing by no later than July 22, 2020, and Plaintiff shall file her response by no later than August 5, 2020. In the meantime, Defendant's motion to dismiss the SAFE Act claim is terminated until the requested submissions are filed.[7]

### D. *Pierce* Public Policy Claim

Klein argues that Plaintiff's *Pierce* public policy claim must be dismissed because the Complaint does not allege the necessary elements, such as how Klein violated a public policy, whether Plaintiff complained about the public policy violation, or the causal link between any public policy violation and the termination of Plaintiff's employment. (Def. Br. at 11-12.) Plaintiff responds that the SAFE Act has sufficiently established a public policy mandate to support a *Pierce* claim. (Pl. Br. at 35.) In response, Klein replies that Plaintiff's *Pierce* claim must be dismissed because the SAFE Act prohibits a duplicative cause of action. (Def. Reply at 6.)

---

[6] I am directing Celgene to provide briefing on the issue of waiver, because Plaintiff's SAFE Act claim is also asserted against Celgene.

[7] I note that when the Court ultimately issues its decision on the SAFE Act claim, I will also address whether Plaintiff has adequately pled such a claim against Klein, individually.

17

*Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 72 (1980) established a common law cause of action for wrongful discharge "when the discharge is contrary to a clear mandate of public policy." "The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." *Id*. *Pierce* is the common law precursor to the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8, "*Pierce* requires the employee to prove not only that he or she complained about a public policy, but that his or her resulting discharge violated a clear mandate of public policy." *Tartaglia v. UBS PaineWebber, Inc.*, 197 N.J. 81, 112 (2008). However, a plaintiff is barred from raising a *Pierce* claim where a public policy interest is exclusively protected by a statute. *Bosshard v. Hackensack Univ. Med. Ctr.*, 345 N.J. Super. 78, 90 (App. Div. 2001).

Here, Plaintiff's *Pierce* claim fails for two reasons. First, the claim is barred by the SAFE Act. The Act provides that "[a] private cause of action provided for in this section shall be the sole remedy for a violation of this act." N.J.S.A. 34:11C-5. As the basis of her *Pierce* claim, Plaintiff alleges that her termination "is contrary to the public policy of New Jersey for an employer to terminate an employee because the employee is tending to a child who has been criminal[ly] sexually assaulted and who requires reasonable time to address both criminal and medical issues from the criminal assault." (Compl. ¶107.) However, such a claim seeks to vindicate rights protected exclusively by the SAFE Act. *See Bosshard*, 345 N.J. Super. at 90; *see also Campbell v. Sedgwick*, No. 11-642, 2011 U.S. Dist. LEXIS 126480, at *8 (D.N.J. Nov. 2, 2011) (explaining that a *Pierce* claim would "be barred if it does not seek to vindicate interests that are independent of those protected by the NJLAD"). Accordingly, I find that Plaintiff's *Pierce* claim is duplicative of Plaintiff's SAFE Act claim, and it is subject to dismissal.

Furthermore, even if Plaintiff's claim were not barred under the SAFE Act, Plaintiff has not alleged that she reported the alleged public policy violation to Klein or Celgene, a required element of a *Pierce* claim. *Pierce* is meant to protect employees who blow the whistle on public policy violations. *Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 179-80 (1998). An employee who does not complain about, or report, a public policy violation cannot state a *Pierce* claim. *See Tartaglia*, 197 N.J. at 109 (explaining that a *Pierce* claims requires a "sufficient expression of that disagreement to support the conclusion that the resulting discharge violates the mandate of public policy and is wrongful"); *Horneff v. PSEG Nuclear, LLC,* No. 13-975, 2015 WL 263128, at *13 (D.N.J. Jan. 21, 2015) (dismissing a *Pierce* claim because plaintiff "has not alleged that he resisted or attempted to disclose Defendants' illicit conduct"). Plaintiff has not alleged that she reported the alleged policy violation to anyone, either internally or externally. Consequently, Plaintiff's *Pierce* claim against Klein is dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Amy Klein's Rule 12(b)(6) motion to dismiss for failure to state a claim is **GRANTED** in part as follows: Plaintiff's FMLA and LAD claims are dismissed without prejudice. Plaintiff is provided leave to file an amended complaint to cure the deficiencies outline in this Opinion. Plaintiff's *Pierce* and NJFLA claims are dismissed with prejudice. However, Defendant's motion to dismiss Plaintiff's SAFE Act claim is terminated, pending additional briefing on the issue of waiver; Defendants, both Celgene and Klein, are directed to file their briefing by no later than July 22, 2020, and Plaintiff shall file her response by no later than August 5, 2020.

DATED:  July 8, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge